## SEXUAL MISCONDUCT POLICY

Salve Regina University's policies emanate from the University's Catholic identity and Mercy Mission. Salve Regina is committed to promoting an environment which supports its educational mission and which preserves the safety and dignity of its members. A university is a place where learning to make wise choices is a constant concern for students, faculty, and staff. At Salve Regina University, choices are framed by a moral commitment to justice and mercy, the dignity of the individual, and responsibility to others.

Salve Regina University is "an academic community that welcomes people of all beliefs" and backgrounds, and appreciates the benefit that diversity brings to our community while remaining steadfast to our Catholic identity. And the Catholic Church believes that the proper context for sexual union, as stated by Vatican II, is the "union of life and love" epitomized in the covenant of marriage.

All forms of sexual misconduct, including dating violence, domestic violence, stalking, and sexual assault will not be tolerated, is often a crime, and is always a violation of a person's rights, dignity, and integrity.  In the Salve Regina University community, everyone should be free from all forms of abuse, assault, harassment, and coercive conduct, which constitutes sexual misconduct as defined by this policy.  Any violation of this policy will be regarded as a serious violation of the Student Code of Conduct.  Members of the University community are responsible for familiarizing themselves with and abiding by the Salve Regina University policy on sexual misconduct.

Members of Salve Regina University community, guests and visitors have the right to be free from sexual violence and discrimination. All members of the University community are expected to conduct themselves in a manner that does not infringe upon the rights of others. The University's sexual misconduct policy has been developed to reaffirm this expectation and to provide recourse for those individuals whose rights may have been violated. The University does not condone sexual misconduct; regardless of the sexual orientation or gender identity of individuals engaging in the sexual misconduct. The University will remedy all unwelcome conduct of a sexual nature and will impose serious sanctions on anyone who violates this policy. Resolution by the University is intended to bring an end to harassing or discriminatory conduct, prevent its recurrence and remedy the effects on the victim and the community.

While the policy below is quite detailed and specific, the expectations of this community can be summarized in this simple paragraph: Consent is clear sexual permission and can only be given by one of legal age. Consent can be given by word or action, but non-verbal consent is more ambiguous than explicitly stating one's wants and limitations.

Finally, there is a difference between seduction and coercion. Coercion is defined in this policy as pressuring another person for sex. Coercing someone into engaging in sexual activity violates this policy in the same way as physically forcing someone into engaging in sexual activity. Violations of the University Sexual Misconduct Policy include coercion and using force, which can be physical or emotional (for example, but not limited to, threats, intimidation, pressure).

Use of alcohol or other drugs (being intoxicated or drunk) will never function as a defense for any behavior that violates this policy.

The sexual orientation and/or gender identity of individuals engaging in sexual activity is not relevant to allegation under this policy.

The University encourages the reporting of all sexual misconduct to the Office of Safety & Security, Title IX Coordinator, Office of Residence Life and/or the Dean of Students' office. The University will promptly and effectively remedy all instances of reported sexual misconduct by providing resources to the victim and addressing the effects on the victim and the community.

**Violations of the University Sexual Misconduct Policy**

Sexual misconduct is a serious offense and such violations are subject to any combination of conduct sanctions as described in the Code of Student Conduct, with individuals found responsible for violations of the nonconsensual sexual intercourse policy facing a sanction of University suspension or University expulsion. Deviations from suspension or expulsion are rare and only made where there are compelling mitigating circumstances. Suspensions, if given, may be based on satisfying conditions during the suspension rather than solely on a period of time. The university reserves the right to take whatever measures it deems necessary in response to an allegation of sexual misconduct in order to protect students' right and personal safety.  Such measures include, but are not limited to, modification of living arrangements and interim action pending a hearing.  Predatory, pattern and/or repeat offenders face expulsion, which is also available for any serious offense whether pattern, predatory or repeat offending is evidence or not.

The other forms of sexual misconduct defined below cover a range of behaviors, and therefore a range of sanctions from warning to expulsion can be applied, depending on the nature of the misconduct.

Violations of the University's sexual misconduct policy include, but are not limited to:

1. **Sexual Harassment** is defined as unwelcomed conduct of a sexual nature. Examples of sexual harassment may include but are not limited to – unwelcomed sexual advances; requests for sexual favors; verbal or physical contact of sexual nature; situations in which benefits are granted or withheld based on submission to or rejection of unwelcomed requests or conduct based on statutorily-protected characteristic, such as sex; situations in which the University environment is sexually hostile or oppressive to members of the University because of the actions of students, co-workers, supervisors or other members of the University community; written contact, such as sexually suggestive, harassing or obscene letters, texts, faxes, emails, notes, invitations, etc.; verbal contact, such sexually suggestive or obscene comments, phone calls, threats, slurs, epithets, jokes about gender-specific traits, sexual propositions; physical contact, such as intentional touching, pinching, brushing against another's body, impeding or blocking movement, assault, coercing sexual intercourse; visual contact, such as leering or staring at another's body, gesturing, displaying sexually suggestive objects or pictures, cartoons, posters or magazines.

   a. *Hostile Environment* includes situations where harassment is sufficiently severe, pervasive or persistent and objectively offensive that it unreasonably interferes with, limits or denies the ability to participate in or benefit from the University's academic programs, student employment program, Residence Life program or university activities. Sanctions can be imposed for the creation of a hostile environment. The determination of whether an environment is "hostile" may be based on a multitude of circumstances including, but are not limited to:

      i. The frequency of the speech or conduct;
      ii. The nature and severity of the speech or conduct;
      iii. Whether the speech or conduct was physically threatening;
      iv. Whether the speech or conduct was humiliating;
      v. The effect of the speech or conduct on alleged victim's mental and/or emotional state;
      vi. Whether the speech or conduct arose in the context of other discriminatory conduct;
      vii. Whether the speech or conduct unreasonably interfered with the alleged victim's educational or work performance;
      viii. When a statement is a mere utterance of an epithet, which engenders offense in a person or offends by mere discourtesy or rudeness.

   b. *Quid Pro Quo Sexual Harassment* exists when there are unwelcomed sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature where submission to, or rejection of, such conduct results in adverse educational or employment

action. Quid pro quo harassment may also exist when a threat of adverse action or a promise of a benefit is explicitly conditioned on submission to, or rejection of, such requests.

**2. Sexual Assault –** Any sexual act directed against another person, without consent of the victim, including instances where the victim is incapable of giving consent.

    a.  **Nonconsensual Sexual Intercourse** (or attempts to commit the same)often referred to as rape:

        i.   Any sexual intercourse (anal, oral or vaginal),

        ii.  however slight,

        iii. with or without an object,

        iv.  by a person upon another person,

        v.   that is without consent, by physical force and/or abusive sexual contact.

Intercourse includes sexual penetration which is defined as any contact, however slight, of the vagina or anus of a person by any body part (penis, tongue, finger) of another person or an object; and/or any contact, however slight, of the mouth of a person by a sex organ of another person. Evidence of emission of semen is not required to prove sexual penetration.

    b.  **Nonconsensual Sexual Contact** (or attempts to commit the same) often referred to as fondling:

        i. Any intentional sexual touching, including but not limited to breast, buttocks, inner thigh, groin, genitalia or surrounding area,

        ii. however slight,

        iii. with or without an object,

        iv. by person upon another person,

        v. that is without consent, by physical force and/or abusive sexual contact

Sexual contact includes intentional contact with the breast, buttocks, groin, or genitals, or touching another with any of these body parts, or making another touch you or themselves with or on any of these body parts; any intentional bodily contact in a sexual manner, though not involving contact with/of/by breast, buttocks, groin, genitals, mouth or other orifice.

    c.  **Incest**: Sexual intercourse between two persons who are related to each other within the degrees wherein marriage is prohibited by law

    d.  **Non consensual sex with a minor:** (often referred to as statutory rape) – Sexual Intercourse with a person who is under the statutory age of consent. This is consensual sexual penetration by a person 18 years of age or older of a person over 14 years of age, but under the age of consent (16 years old).

        i.   Any sexual intercourse (anal, oral or vaginal),

        ii.  however slight,

        iii. with or without an object,

        iv.  by a person upon another person,

        v.   that is without consent, by physical force and/or abusive sexual contact.

Intercourse includes sexual penetration which is defined as any contact, however slight, of the vagina or anus of a person by any body part (penis, tongue, finger) of another person or an object; and/or any contact, however slight, of the mouth of a person by a sex organ of another person. Evidence of emission of semen is not required to prove sexual penetration.

**3.  Sexual Exploitation**: Taking nonconsensual or abusive sexual advantage of another for one's own advantage or benefit, or to benefit a person other than the one being exploited. Examples of sexual exploitation include, but are not limited to:

    a.  Prostituting another student;

    b.  Non-consensual video or audio recording of sexual activity;

    c.  Exceeding the boundaries of explicit consent, such as allowing friend to hide in a closet to be witness to one's consensual sexual activity or through electronic means;

    d.  Engaging in voyeurism;

e. Knowingly transmitting or exposing another student to sexually transmitted infections or virus without their knowledge;

f. Invasion of sexual privacy;

g. Exposing one's genitals in non-consensual circumstances; inducting another to expose their genitals; and/or

h. Sexually-based stalking and/or bullying.

**4. Gender Based Harassment** - Gender Based Harassment is defined as unwelcome conduct of a nonsexual nature based on a person's perceived sex, including conduct based on sexual orientation, gender identity, gender expression, and nonconformity with gender stereotypes, which may include acts of aggression, intimidation, or hostility, whether verbal, nonverbal, graphic, physical, or otherwise, that is persistent, pervasive and/or severe. Examples of gender-based harassment may include, but are not limited to: using derogatory comments and terms toward a male or female who does not act in ways that align with gender stereotypes, telling someone to use a restroom that does not align with that person's gender identity, making generalized derogatory comments about one's gender, and exclusion from an activity, employment opportunity, or academic program based on sexual orientation or gender identity.

Gender-based harassment is prohibited when:

i. Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment or education; and/or

ii. Submission to, or rejection of, such conduct by an individual is used as a basis for academic or employment decisions; and/or

iii. Such conduct substantially interferes with an individual's academic or professional performance, or creates an intimidating, hostile, or offensive employment, educational, or living environment based on gender.

While gender-based harassment, which is based on non-sexual factors, may be distinguished from sexual harassment, these types of behaviors may contribute to the creation of a hostile environment. The definition of hostile environment provided under the sexual harassment section also applies in the context of gender-based harassment.

**5. Stalking** – Any behavior or activities occurring typically on more than on occasion that collectively instill fear and/or threaten a person's safety, mental health or physical health. Stalking may occur in a range of formats including, but not limited to, in-person conduct, writings, texting, voicemail, email, social media, following someone with a global position system (GPS), and video/audio recording.

*Examples* of stalking behaviors include, but are not limited to:

- repeated unwanted or unsolicited contact or leaving unwanted gifts or items;
- posting disturbing messages or threats online;
- creating, attempting to create, or disseminating unauthorized recordings of another;
- gathering information about an individual from family, friends, co-workers, and/or classmates, or by electronic means by installing spy-ware on a computer or using GPS;
- threats in any form about an individual or their loved ones or threats to harm oneself;
- damaging, stealing, borrowing, or relocating property, trespassing and vandalism;
- pursuing, waiting, or showing up uninvited at a workplace, residence, classroom, or other locations frequented by an individual; and
- directing a third party to take any of the above acts.

**6. Dating Violence:** Violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim is dating violence. The existence of such a relationship shall be determined based upon the reporting party's statement and with consideration of the following

factors: the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship. The nature of dating violence includes, but is not limited to physical, psychological, sexual abuse and/or the threat of violence. As an example, dating violence is a type of abusive behavior in any relationship that is used by one partner to gain or maintain power and control over another intimate partner. Examples of dating violence include, but are not limited to:

    a.   Hitting, slapping, punching, kicking, pulling hair or other physical misconduct;
    b.   isolating a partner from family and friends;
    c.   coercing a partner to have sex without protection or pursuing sexual activity when a partner is afraid to say no;
    d.   Threatening to reveal a person's sexual orientation without the person's permission;
    e.   Exhibiting excessive possessiveness and jealousy;
    f.   constantly belittling or insulting a partner;
    g.   Checking a partner's cell phone or email account without permission;
    h.   Demanding that a partner dress or act in a certain way; and/or
    i.   Threatening violence against the victim's acquaintances, friends, or family members.

**7. Domestic Violence:** This can be physical, sexual, emotional, economic, or psychological actions or threats of actions that influence another person who is a household or family member. This includes any behaviors that intimidate, manipulate, isolate, frighten, terrorize, coerce, threaten, blame, hurt, injure, or wound someone. See broader definition on page 61.

**8. Retaliation** is defined as when an individual harasses, intimidates or takes other adverse action(s) against a person because of the person's participation in any code of conduct investigation (including but not limited to cases of discrimination or sexual misconduct or their support of someone involved in an investigation of discrimination or sexual misconduct).It shall be a violation of this policy for anyone to willfully make false allegations of harassment or sexual harassment. Retaliatory actions include, but are not limited to, threats or actual violence against the person or their property, adverse educational or employment consequences, ridicule, intimidation, bullying, or ostracism.

If during the process of a sexual misconduct investigation further alleged violations are reported or discovered, then those alleged violations will be addressed simultaneously with the original charge(s) through the sexual misconduct adjudication process.

## Other Definitions

**Consent** is defined as words or actions that show an informed and voluntary agreement to engage in mutually agreed upon sexual activity. Consent cannot be gained by force, by ignoring or acting in spite of the objections of another or by taking advantage of the incapacitation of another, where the other person(s) knows or reasonably should have known of such incapacitation. Sexual activity with someone whom one should know to be – or based on the circumstances should reasonably have known to be – mentally or physically incapacitated (by alcohol or other drug use, unconsciousness), constitutes a violation of the sexual misconduct policy. Consent is also absent when the activity in question exceeds the scope of consent previously given.

What is consent? Consent, as noted above, means words or actions that show an informed and voluntary agreement to engage in mutually agreed-upon sexual activity.  Consent to one form of sexual activity should not, and cannot, be taken as consent to any other sexual activity. Under this policy, "No" always means "No" and "Yes" may not always mean "Yes." For example, when alcohol or other drugs are being used, a person will be considered unable to give valid consent if they cannot fully understand the details of the sexual

interaction (who, what, where, when, why, or how) because they lack the capacity to reasonably understand what they are doing. Consent cannot be given by an individual who is incapacitated or asleep. In addition, silence – without clear actions demonstrating permission – cannot be assumed to indicate consent. Anything but a clear, informed and voluntary consent to any sexual activity is equivalent to a "no."

Consent:

- Requires Communication
    - Words or actions must be used to establish consent. The absence of "no" does not equal "yes."
- Must entail an uninfluenced "yes"
    - Consent cannot be established if one person is pressuring the other – this can be physical or emotional. Pressuring another person by saying things like "If you love me you'll do this" or "I'll find it elsewhere if I don't get it from you" does not lead to consent and is not respectful of the other person's wishes.
    - Happens one step at a time, every time.  Just because your partner agrees to one thing that does not mean they agree to everything. Oral sex does not give consent for intercourse and vice versa. Also, hooking up one time, does not give permission for every other time – even if you are in a relationship, even if it has happened many times before.
    - Is free to be taken back at any time. At any point during a sexual encounter each partner should feel free to change his or her mind and the other partner must respect that person's decision.
    - In order to give consent, one must be of legal age.

**Incapacitation -** Is defined as a state where an individual is temporarily or permanently impaired to the extent they do not have command over their own decisions.  Incapacitation may be caused by mental or physical disability, illness, sleep or when a person has used alcohol or other drugs, including prescribed medication, to an extent where that person can no longer make rational, informed decisions. A person who does not comprehend the "who, what, when, where, why or how" of a sexual interaction may be incapacitated. Sign of incapacitation includes, but are not limited to:

- Amount of alcohol/drugs consumed
- Stumbling or shaky equilibrium
- Vomiting
- Slurred speech
- Bloodshot eyes
- Smell of alcohol
- Outrageous or unusual behavior
- Unconsciousness (short or long periods of time)

If a person may be incapacitated then all potential sexual activity should cease until consent can be clearly given.  If a person knows or should reasonably know that someone is incapacitated, then all potential sexual activity must cease until consent can again be freely given.

Remember, a person being intoxicated or impaired by drugs or alcohol is NEVER an excuse for sexual misconduct, stalking, dating or domestic violence, and does not diminish that person's responsibility to obtain consent or recognize incapacitation.

Other guidance on consent and assessing incapacitation:

A person who wants to engage in a specific sexual activity is responsible for obtaining consent for that activity. The lack of negative response or protest does not constitute consent. Lack of resistance does not

constitute consent. Silence and/or passivity does not constitute consent. Relying solely on non-verbal communication before or during sexual activity can lead to misunderstanding and may result in a violation of this Policy. It is important not to make assumptions about whether a potential partner is consenting. In order to avoid confusion or ambiguity, participants are encouraged to talk with one another before engaging in sexual activity.  If confusion or ambiguity arises during sexual activity, participants are encouraged to stop and clarity a mutual willingness to continue that activity.

Consent to one form of sexual activity does not, but itself, constitute consent to another form of sexual activity. For example, one should not presume that consent to oral-genital contact constitutes consent to vaginal or anal penetration. Consent to sexual activity on a prior occasion does not, by itself, constitute consent to future sexual activity. In case of prior relationships, the manner and nature of prior communications (verbal and/or non-verbal) confirming consent between the parties and the context of the relationship may have bearing on the presence of consent at the time of the reported incident.

Once consent has been given, it may be withdrawn at any time. Once consent is withdrawn, the sexual activity must cease immediately.

In evaluating consent in cases of alleged incapacitation, the University asks two questions: (1) did the person initiating sexual activity know the other person was incapacitated? And if not, (2) should a sober, reasonable person in the same situation have known the other party was incapacitated? If the answer to either of these questions is "YES", then consent was absent and the conduct is likely a violation our policy(s).


**Days,** for this document, is defined as calendar days.

**Force** is the use of physical violence and/or imposing on someone physically to gain sexual access.  Force also includes threats, intimidation (implied threats) and coercion that overcome resistance or produce consent for example, "Have sex with me or I'll hit you."  "Okay, don't hit me, I'll do what you want".

- Coercion is unreasonable pressure for sexual activity.  Coercive behavior differs from seductive behavior based on the type of pressure someone uses to get consent from another.  When someone makes clear to you that they do not want sex, that they want to stop, or that they do not want to go past a certain point of sexual interaction, continued pressure beyond that point can be coercive.
- NOTE: There is no requirement that a party resist the sexual advance or request, but resistance is a clear demonstration of non-consent.  The presence of force is not demonstrated by the absence of resistance.  Sexual activity that is forced is by definition non-consensual, but non-consensual activity is not by definition forced.


**Intimidation** is defined as implied threats or acts that cause a reasonable fear of harm in another.

**Preponderance of the Evidence** standard is defined as the greater weight of the evidence/information or 'more likely than not" that the violation has occurred. University conduct procedures are not identical to a civil or criminal proceeding; therefore a lower standard of proof is required to reach a conclusion than in a criminal proceeding.  See broader definition on page 21.

**Sexual Penetration** is defined as any contact, however slight, of the vagina or anus of a person by any body part (penis, tongue, finger) of another person or an object; and/or any contact, however slight, of the mouth of a person by a sex organ of another person.  Evidence of emission of semen is not required to prove sexual penetration.

## Title IX Coordinators and their Role

The US Department of Education and the Office of Civil Rights have issued specific requirements for educational institutions regarding sexual misconduct. The sexual harassment of students, which includes acts of sexual violence, is a form of sex discrimination prohibited by federal law under Title IX of the Education Amendments of 1972, and therefore is a civil rights violation. In compliance with the Title IX requirements, the University has named **J. Malcolm Smith,** Associate Vice President/Dean of Students, as its **Title IX Coordinator**.

**Emily Diomandes,** Assistant Dean of Students, has been named as its **Title IX Deputy Coordinator for Students**.  The role of the deputy coordinator is to:
1. Oversee University compliance with Title IX regulations. The Deputy Coordinator will meet with students as needed to and serve as a resource for students wishing to report any acts of sexual violence or sexual harassment, i.e. violations of Title IX.
2. Provide oversight for all Title IX complaints and identify patterns, issues or problems re: those same complaints. The Deputy Coordinator does not have a role in the sexual misconduct adjudication process, which is the purview of the Dean of Students' Office.
3. Coordinate and develop programming and informational initiatives enabling students to fully understand sexual violence and sexual harassment as forms of sexual discrimination and further educate students re: University procedures and policies that address those issues.

**Emily Diomandes'** office is located in the Center for Student Development, lower level Miley Hall.  Her phone number is 401-341-2640 and her email is Emily.diomandes@salve.edu
**J. Malcolm Smith**, Associate Vice President/Dean of Students, is located in 118 Miley Hall.  His phone number is 401-341-2145 and his email is Malcolm.Smith@salve.edu

**Nancy Escher**, Human Resources Generalist, has also been named as **Deputy Title IX Coordinator for Employees.**  Her office is located in Walgreen Hall.  Her phone number is 401-341-2157 and her email is Nancy.escher@salve.edu.

## Sexual Assault is legally defined in Rhode Island
Sexual assault is a felony crime in Rhode Island which we strongly encourage students to report to local police authorities. State law defines sexual assault as three degrees:
**First degree Sexual Assault**, also called rape, has two major components:
   1. Any forced, coerced penetration of the vagina, anus or mouth by any part of another's body or an object; and ,
   2. Legally, lack of consent does not necessarily require physical resistance or verbal refusal. For instance, someone who is incapacitated or asleep is, by definition of the law, unable to give consent.
**Second Degree Sexual Assault** is non-consenting sexual contact with another person. This includes any forced or coerced contact with a person's genital area, inner thigh, buttocks, or the breast of a female.
**Third Degree Sexual Assault** is consensual sexual penetration by a person 18 years of age or older of a person over 14 years of age, but under the age of consent (16 years old).

## Campus Reporting Procedures
Students are encouraged to report any incidents of abuse, assault, or harassment to the Office of Safety and Security, to the Title IX Coordinator, the Office of Residence Life, Counseling Services, Health Services, and the Dean of Students' Office, and/or local law enforcement. Staff are available 24 hours a day to provide immediate support and make arrangements for emergencies and/or counseling services. It is important to remember that prompt reporting is vital to the preservation of evidence that may substantiate charges. The University maintains the right to investigate and apply its regulations in off campus situations that bear on the Salve Regina University community.

Many individuals who experience sexual assault or abuse don't report it at the time of the incident. If you were assaulted weeks ago – or even years ago – assistance is still available. Talking with someone now may help you cope better with abuse from the past, whether it was rape, child sex abuse, incest or sexual harassment. When a report is received by the University, the University will follow the policy that is in place at the time of the report, not the policy that was in effect during the time in which the incident occurred.

In certain circumstances, the "University" may be listed as the complainant for investigation purposes (due to the receipt of 3rd party reports and/or when there is a reluctant victim/witness).

If you decide to report an assault, every effort will be made to keep the identity of the victim protected. University personnel are only informed on a "need to know" basis. If you choose to report an assault to either Health Services or Counseling Services, that information, including the identities of the victim and perpetrator, is bound by the confidentiality laws of the state of Rhode Island. When a report is received by the Dean of Students, they are responsible for taking appropriate action. An investigation will take place and, if there is a preponderance of evidence that a violation has occurred, then University sanctions will be imposed.

The University will provide medical and counseling assistance to victims of sexual misconduct and assault. The Office of Safety and Security is available 24 hours a day, seven days a week. Counseling Services is available from 9 a.m. to 5 p.m. Monday through Friday but can be reached after hours, on an emergency basis by calling the Office of Safety and Security or through the residence life area coordinator. Health Services is available from 9 a.m. to 5 p.m. Monday through Friday. Students are also encouraged to use Newport Hospital.

Students who are dissatisfied with the handling of cases involving sexual assault/sexual misconduct or harassment may notify the Title IX Coordinator or the Office of Civil Rights (Boston Office), U.S. Department of Education, 5 Post Office Square, eighth floor, Boston, MA 02109-3921, phone 617-289-0111, fax 617-289-0150, ocr.boston@ed.gov.

## <u>Confidentially Disclosing Sexual Violence and Formal Reporting</u>
## Know the Options
The University encourages victims of sexual violence to talk to somebody about what happened – so victims can get the support they need, and so the University can respond appropriately.
Different employees on campus have different responsibilities.

- Some are required to maintain near complete **confidentiality (counseling services and health services)**. They can talk with a victim in confidence and generally only report to the University that an incident occurred without revealing any personally identifying information. Disclosures to these employees will not trigger a University investigation into an incident against the victim's wishes.
- All other employees are required to report all the details of an incident (including the identities of both the victim and alleged perpetrator) to the Title IX coordinator. A report to these employees (called "responsible employees") constitutes a report to the University – and generally obligates the University to investigate the incident and take appropriate steps to address the situation.

This policy is intended to make students aware of the various reporting and confidential disclosure options available to them – so they can make informed choices about where to turn should they become a victim of sexual violence. The University encourages victims to talk to someone identified in one or more of these groups.

The following describes more about the two reporting options at Salve Regina University:

## Confidentiality and Reporting Sexual Misconduct

University officials, depending on their roles at the University, have varying reporting responsibilities and abilities to maintain confidentiality. In order to make informed choices, one should be aware of confidentiality and mandatory reporting requirements when consulting campus resources. On campus, some resources (counseling services and health services) may maintain confidentiality, offering options and advice without any obligation to inform an outside agency or individual unless you have requested information to be shared. These offices will submit an Anonymous Sexual Misconduct reporting form regarding the incident for purposes of the Clery Act, but this Anonymous Sexual Misconduct reporting form does not include any personally identifiable information.

If you would like the details of an incident to be kept confidential, you may speak with a member of Salve Regina's Health Services office or Counseling Services office, or an off campus rape crisis center counselor who will maintain confidentiality. Members of Salve Regina's health and counseling services will only submit the Anonymous Sexual Misconduct form which does not include any personally identifiable information. The purpose of an anonymous report is to maintain your confidentiality while taking steps to ensure future safety for yourself and others. This service is also made available so that victims have access to counseling and health services at any time. With this information, the University can maintain accurate records about the number of assaults involving students; determine whether there is a pattern of assaults with regard to particular location, method, or assailant; and alert the campus community to potential danger.

## Reports to "Responsible Employees" and Formal Reporting Options:

A "responsible employee" is a University employee who has the authority to redress sexual violence, who has the duty to report incidents of sexual violence or other student misconduct, or who a student could reasonably believe has this authority or duty.  All University employees – including RAs, faculty, student organization advisors, and staff members, are the University's "responsible employees" (other than counseling and health service staffs, whose information is confidential).   Before a victim reveals any information to a responsible employee, the employee should ensure that the victim understands the employee's reporting obligations – and, if the victim wants to maintain confidentiality, direct the victim to confidential resources (counseling services and health services).

 When a victim tells a responsible employee about an incident of sexual violence, the victim has the right to expect the University to take immediate and appropriate steps to investigate what happened and to resolve the matter promptly and equitably.
A responsible employee must report to the Title IX coordinator all relevant details about the alleged sexual violence shared by the victim and that the University will need to determine what happened – including the names of the victim and alleged perpetrator(s), any witnesses, and any other relevant facts, including the date, time and specific location of the alleged incident.

To the extent possible, information reported to a responsible employee will be shared only with people responsible for handling the University's response to the report. A responsible employee should not share information with law enforcement without the victim's consent or unless the victim has also reported the incident to law enforcement.

If the victim wants to tell the responsible employee what happened but desires confidentiality, then the responsible employee should refer the student to the confidential reporting options.

If a victim discloses an incident to a responsible employee but wishes to maintain confidentiality or requests that no investigation into a particular incident be conducted or disciplinary action taken, the University must weigh that request against the University's obligation to provide a safe, non-discriminatory environment for all students, including the victim. If the University determines that an investigation and disciplinary

proceedings will be taken, the University will inform the victim prior to the start of investigations and will, to the extent possible, only share information with people responsible for handling the University's response. The University will remain mindful of the victim's well-being and take steps necessary to protect and assist the victim.  The University may not require a victim to participate in any investigation or disciplinary proceeding.

**Formal Reporting**: You are encouraged to speak to University officials, including the Office of Safety & Security, Title IX Coordinator, and the Dean of Students' Office to make formal reports of incidents of sexual misconduct. The University also considers these people to be "responsible employees." You have the right, and can expect, to have incidents of sexual misconduct taken seriously by the University when formally reported, and to have those incidents investigated and properly resolved through adjudication procedures. Formal reporting still affords privacy to the reporter, and only a small group of officials who need to know will be told. Information will be shared as necessary with investigators, witnesses, and the responding party. The circle of people with this knowledge will be kept as tight as possible to preserve your rights and privacy.

**Reporting to police:** You are also encouraged to report the incident to local law enforcement. Formal reporting options include contacting the police department in the jurisdiction in which the incident occurred. Reporting to police is not mandatory and the University may investigate a case even if not reported to the police.

## Federal Timely Warning Obligations

Victims of sexual misconduct should be aware that University administrators must issue timely warnings for incidents reported to them that pose a substantial threat of bodily harm or danger to members of the campus community. The University will make every effort to ensure that a victim's name and other personally identifiable information are not disclosed, while still providing enough information for community members to make safety decisions in light of the danger.

## Complainant's Bill of Rights

The University will take interim steps to protect complainants of sexual misconduct and maintain a positive learning environment by minimizing or eliminating contact with the  responding student and providing reasonable academic and administrative accommodations in accordance with the Clery Act and Title IX.

- The complainant has the right to have any and all incidents of sexual misconduct treated seriously and the right to be treated with dignity.
- The complainant will be informed in a timely manner of available options including the necessary steps and potential consequences of each option.

- The complainant has the right to be free from undue coercion from any members of the university community to pursue or not pursue any course of action.

- The  complainant has the right to be notified of her/his option to notify appropriate law enforcement authorities, including local police and to be informed about how to notify the appropriate law enforcement agency and receive assistance from University personnel in notifying these authorities, if requested.

- The complainant will receive information on how to make a confidential report for the purposes of tracking campus crime (Sexual Misconduct Anonymous Reporting form).

- The  complainant has the right to be informed of the student conduct process and procedures.

- The  complainant has the same right as the accused to have others present throughout the student conduct process.

- The  complainant has the right to be informed of the outcome, in writing, of any Salve Regina student conduct proceeding involving an alleged sexual misconduct offense and the right to appeal the outcome.

- The  complainant has the right to request a change in academic and living situations after an alleged sexual misconduct offense and be informed of the reasonably available options for those changes.

- The  complainant will be informed about campus and community resources for counseling, medical services, advocacy, and other student services for victims of sexual misconduct.

## Respondent's Bill of Rights

The Respondent has the right to:

- Be treated with respect by all University officials;
- Be informed of the policy (or policies) alleged to have been violated;
- Be notified of available counseling, mental health, and medical services both on campus and in the community;
- Be free from any form of retaliation and to be able to report any forms of retaliation against them;
- Bring an advisor of their choice to any investigational interview or meeting;
- Receive updates and be informed of the status of the investigation;
- Identify witnesses or third parties who may have relevant information;
- Present relevant evidence;
- Be informed of the outcome of the investigation in writing;
- A timely investigation.
- Decide not to answer questions;
- Decline participation in an investigation (If a respondent chooses not to participate in an investigation, the investigation will still move forward.  A decision, including sanctioning, may be rendered without participation or input from the respondent.
- Initiate the appeals process, under the standards for appeal

**Accommodations/Interim Measures:**

Accommodations and interim measures are available to complainant, respondent and other  involved students.  Accommodations that the Title IX Coordinator and/or Dean of Students' staff will advocate for, if available, include:

- Temporary housing/emergency room change. The University reserves the right to relocate students when deemed necessary.
- Assistance from the University support staff in completing a permanent room relocation;
- Arranging to dissolve a housing contract and pro-rating a refund;
- Exam, paper or assignment rescheduling;
- Taking an incomplete in a class;

- Transferring class sections;
- Taking a leave of absence from the University;
- A no-contact order; protective orders
- Counseling assistance;
- Escorts or other campus safety protections;
- Transportation assistance or support;
- Assistance with working situations
- Help with finding an off-campus residential alternative;
- Assistance with alternative course completion options;
- Other accommodations for safety as necessary, including working with local authorities to obtain a no trespassing order or restraining order
- Assistance with questions regarding Visa & immigration
- Assistance with student financial aid

**Sexual Misconduct Investigation & Adjudication procedure**

To initiate a formal student conduct process, a complainant may file a report with the Office of Safety & Security, with the Title IX Coordinator, Dean of Students' Office, and/or Office of Residence Life. The report should include: the responding student's name; the date, time and place, circumstances surrounding the alleged sexual misconduct; the names of any witnesses to the incident(s), and any other information believed to be relevant. This report will be shared with the responding student in order for them to be aware of what allegations initiated the investigation.

All reports will be taken seriously and will be investigated and addressed in a timely fashion..  Every reasonable effort will be made to preserve the privacy of all parties to the extent that the investigation allows. Only relevant information will be disclosed to those people with a need for information regarding the investigation.  The case will be assigned to 2 investigators.  The investigation may include, but is not limited to:

- All parties are notified in writing when the investigation/adjudication processes have been initiated.
- The investigative process may include interviews with the complainant, the respondent, any witnesses, , and review of any documents or materials deemed potentially relevant.
- Both the complainant and respondent have the right to be interviewed separately and to present any information relevant to the charge and to provide names of witnesses and/or evidence helpful to them.  Information of a prior consensual dating or sexual relationship between the parties does not imply consent or preclude a finding of sexual misconduct.
- Both the complainant and respondent are permitted to provide names of potential witnesses to the investigator. The investigator will determine which of those potential witnesses, or other persons, may have relevant information about the alleged conduct and may request statements, either orally or in writing.
- Witness statements should not be character evaluations ,as all parties will be presumed to have good character. In addition, how individuals present themselves in other contexts (*e.g.*, friendly, kind, and well-liked) has little probative value in evaluating whether particular conduct occurred. Moreover, the sexual history of the parties will not generally be deemed relevant, as described below.
- Both the complainant and the respondent are permitted to provide other relevant evidence to the investigator. Evidence includes any facts or information presented in support of an assertion and may include text messages, email exchanges, timelines, receipts, photographs, etc. Any documentation shared by the complainant or the respondent with the investigator will be provided to the other party. The investigator may also consider additional documents, items or other relevant information.

- Information that does not directly relate to the facts at issue, but instead reflects upon the reputation, personality, qualities, or habits of an individual is character evidence and is not relevant to the determination of whether there is a policy violation.
- *Pattern Evidence*: Evidence of an occurrence or occurrences of prohibited conduct so distinctive and so closely resembling either party's version of the alleged encounter as to tend to prove a material fact may be considered. Where there is evidence of a pattern of similar prohibited conduct, either before or after the conduct in question, regardless of whether there has been a prior finding of a policy violation, this information may be deemed relevant to the determination of policy violation or assigning of a sanction. Instances will be rare and the determination of relevance will be based on an assessment of whether the previous or subsequent incident was substantially similar to the conduct cited in the report or indicates a pattern of behavior and substantial conformity with that pattern.
- *Prior Sexual History of the Parties*: An individual's character or reputation with respect to other sexual activity is not relevant and will not be considered as evidence. Similarly, an individual's prior or subsequent sexual activity is typically not relevant and will only be considered as evidence under limited circumstances. For example, prior sexual history may be relevant to explain the presence of a physical injury or to help resolve other questions raised by the report. The investigator will determine the relevance of this information and both parties will be informed if evidence of prior sexual history is deemed relevant.
- *Prior Sexual History Between the Parties*: Even in the context of a relationship, consent to one sexual act does not, by itself, constitute consent to another sexual act, and consent on one occasion does not, by itself, constitute consent on a subsequent occasion. Where the parties have a prior sexual relationship, and the existence of consent is at issue, the sexual history between the parties *may* be relevant to help understand the manner and nature of communications between the parties and the context of the relationship, which may have bearing on whether consent was sought and given during the incident in question. However, this does not assume that the prior sexual history was consensual and this should be a factor in considering relevance.
- There is no right for any student to confront the complainant or the respondent or to be present at the same time.
- The investigators determine the relevancy of what information is included in the report.
- The complainant and the respondent will have the opportunity to read/review/respond and ask clarifying questions of/to the investigative report.
- Witnesses do not have the right to review the investigative report.
- Copies of the final investigative report are not given to the complainant or respondent; they can view it and take notes, but copies or photographs are not allowed.  The final report can also be viewed by the advisor of their choice (of the respondent/complainant)
- When the investigation is completed, the investigators will determine, based on the preponderance of the evidence, if a violation of the sexual misconduct policy and/or student code of conduct has occurred.
- The investigative report and the outcome will be given to the Associate Dean of Students or designee who will define the corrective and/or disciplinary action to be taken and will inform both the complainant and the respondent, simultaneously, of the outcome in writing. The University will not require the respondent or complainant to abide by a nondisclosure agreement that would prevent them from sharing information related to the outcome.
- In certain cases and circumstances, the University reserves the right to use external investigators.

(If deemed necessary, the university may defer a case to an external investigator. This investigator will follow the same investigation and adjudication procedures listed. External investigators are external professionals who are trained on Title IX issues and the policies and procedures of Salve Regina University. Each external

investigator has experience and training on how to conduct trauma-informed investigations that are neutral and equitable to parties. They are utilized on an as needed basis.)

**Sexual Misconduct Investigation Timeline**
Below please find an average timeline for a sexual misconduct investigation. Please keep in mind that this timeline is based on averages from past investigations---however, each investigation is handled on a case by case basis and time can vary depending on the report. Salve Regina University takes every report of sexual misconduct, dating violence, domestic violence, and stalking very seriously and therefore will dedicate the appropriate time to investigate.



| |
| :---: |
| **Date of Report** ↓ |
| *5-8 days* ↓ |
| **Notice of Investigation** ↓ |
| *1-3 days* ↓ |
| **Investigation and Interviews Begin** ↓ |
| *20-25 days* ↓ |
| **Investigation Resolved** ↓ |
| *8-10 days* ↓ |
| **Notice of Outcome with Sanction** |

**Informal Resolution**
A complainant and respondent may voluntarily agree to participate in an informal resolution.  Informal resolution does not involve a full investigation and adjudication, and must be deemed appropriate by the Title IX Coordinator.  Prior to entering an informal resolution, both parties must be informed of all options available to them, including the formal investigation process.  Before an outcome in finalized, either party may change their mind at any time and decide to discontinue the informal resolution process.  To complete the informal resolution process, both parties must voluntarily agree to the outcome with the understanding that the outcome is final, and cannot be reversed in the future. Reports that are resolved using informal resolution, and therefore closed, cannot be re-opened or re-investigated using the formal investigation process.

## Disciplinary Actions
Sexual misconduct is a serious offense and such violations are subject to any combination of conduct sanctions as described in the Code of Student Conduct, with individuals found responsible for violations of the nonconsensual sexual intercourse policy facing a sanction of University suspension or University expulsion. Deviations from suspension or expulsion are rare and only made where there are compelling mitigating circumstances. Suspensions, if given, may be based on satisfying conditions during the suspension rather than solely on a period of time.
For the full list of possible disciplinary actions, please refer to page 22.

## Advisors

The complainant and the respondent are entitled to the same opportunity to have one advisor of their choice present during any phase of the investigation. Advisors may not speak for or on behalf of any student during the conduct process. While an advisor cannot speak on behalf of student, time will be granted for the advisor and student to confer, if deemed appropriate, by the investigator or the university personnel overseeing the proceedings. A student is not required to use an advisor.

The role of the advisor will be restricted to advising the respective parties. No advisor may speak at any time in place of the student. The investigator or university personnel overseeing the proceedings reserves the right to exclude an advisor from the proceedings for failure to abide by these guidelines.

## Appeal Process

Both the complainant and the respondent have the right to appeal the outcome. This appeal must be received in writing within 5 business days of the date of the outcome letter.

To initiate this process, the student must write and submit, on his or her own behalf, a request to the Dean of Students' Office within 5 business days after receiving (written) notification of the initial decision.  The request for an appeal must be accompanied by the Dean of Students' Appeal Form (to be issued by the Dean of Students' Office) and must include a statement explaining the grounds for the appeal, all relevant supporting information and documentation and the desired outcome of the appeal request.

The grounds for an appeal must be based upon one of the following:
1. Procedural Error: A procedural error(s) occurred during the original conduct process that significantly impacted the outcome.
2. New Information: Specification of new information, unavailable at the time of the conduct meeting, that if introduced would have significantly affected the outcome of the conduct meeting. A detailed account of the new information must be clearly specified. Information is not considered new if the student did not attend the original meeting or voluntarily withheld information during the original meeting.

If the Vice President for Student Affairs or designee determines within 5 business days that the request satisfies one or more of the aforementioned grounds, they will convene the Appeals Committee, thus the student's request for an appeal will be reviewed by the Committee. Before convening the appeals committee, the VPSA or designee will notify all parties that the VPSA has approved the appeal to move forward to the appeals committee and be given the opportunity to read and rebut the appeal by submitting a written response within 2 business days. The purpose of the appeal is not to provide a second investigation of the case. The Appeals Committee will not meet with the student or re-investigate the case.

## Appeal Procedure

1. The Dean of Students or designee will select, by lottery, an Appeals Committee comprised of five representatives from three pools (student, faculty, staff) with at least one representative but no more than two from each pool.
2. Copies of all pertinent documentation will be made available to the Appeals Committee at the time of the review. All materials received shall be returned at the conclusion of the final committee decision.
3. Once the Appeals Committee convenes, all will review the documentation as a group.
4. The Appeals Committee will meet to make a recommendation to uphold or modify the original disciplinary action within ten days of the procedure being initiated when the University is in session. When there is an appeal on the grounds of new information and the appeals committee finds that the new information may have significantly affected the outcome of the original investigation, then the original investigating body will be reconvened to consider the new information.  This is not a re-investigation but an opportunity for the new information to be presented by the respondent and examined by the complainant. The Appeals Committee's will only review the grounds in which the student has appealed.

5. The Appeals Committee's recommendation is forwarded to the Vice President for Student Affairs. If the Vice President for Student Affairs is party to the review, then the recommendation is sent to the Provost. The Vice President for Student Affairs (or Provost) will have up to 10 business day to review all material and make a determination.
6. The decision of the Vice President for Student Affairs or Provost to uphold, modify or dismiss the initial outcome is final and binding.

The complainant and the respondent will be notified in writing, simultaneously, of the outcome of the appeal.

(See Appeals procedure section of the Student Handbook on page 24, for those who serve on the Appeals Committee.)

## Resources for Victims of Sexual Harassment and Assault
On campus resources for victims are:
- Deputy Title IX Coordinator for Students, Emily Diomandes, 401-341-2640, Center for Student Development, Miley Hall garden level , 8:30am – 4:30pm
- Title IX Coordinator  J. Malcolm Smith, 401-341-2145, Miley Hall, 9am – 5pm
- Dean of Students' Office, 401-341-2145, Miley Hall 118, 8:30am – 5pm; on call 24 hours a day/7 days a week
- Office of Residence Life, 401-341-2210, Walgreen Hall, 8:30am – 4:30pm; after 4:30pm contact RA on duty or Area Coordinator on call
- Office of Safety & Security, 401-341-2325, Tobin Hall, 24 hours a day, 7 days a week
- Health Services, 401-341-2904, Miley Hall, Garden level, 9am-5pm
- Counseling Services, 401-341-2919, Miley Hall, Garden level, 9am – 5pm; on call 24 hours a day/7 days a week
- University Chaplin, Mercy Center for Spiritual Life, Mercy Chapel, 401-341-2368, 8:30am-4:30pm

Off Campus Resources:
- Emergency 911
- Newport Police Department, 120 Broadway, Newport – 401-847-1306 (non-emergency);      401-847-1212 (emergency)
- Newport Hospital, 11 Friendship St, Newport- 401-846-6400
- Day One The Sexual Assault & Trauma Resource Center, 100 Medway, Providence, RI - 401-421-4100
- Women's Resource Center, 114 Touro St, Newport – 401-846-5263

## Risk Reduction Tips
Salve Regina University believes it is never the victim's fault when a sexual assault occurs. However, recognizing patterns can help students reduce both the risk of victimization and the risk of perpetrating.

Generally, sexual assault by a known offender follows a pattern:
**Steps in the Sexual Assault Sequence:**
1. Target and gain the victim's trust
2. Isolate the victim
3. Sexual exploitation/assault
4. Maintaining control

## Helpful Safety Tips

1. Be aware of your surroundings. Knowing where you are and who is around you may help in finding a way out of an uncomfortable or unsafe situation.
2. When you go out, go with a group of friends. Take care of your friends and ask them to take care of you.
3. When you hang out with someone new, let one of your friends know—give them a heads up about who you are with and where you are going. Ask them to check in with you.
4. Trust your instincts. If you feel uncomfortable or unsafe in any situation, trust your gut.
5. Don't accept drinks from people you do not know or trust. Avoid large common sources of alcohol (such as punch bowls, large containers of mixed drinks).

**Tips for Consent**
If you find yourself in a position of being the initiator of sexual behavior, you owe sexual respect to your partner.
1. Do not make assumptions about:
   a. Consent;
   b. Someone's sexual availability;
   c. Whether a person is attracted to you;
   d. How far you can go; or
   e. Whether a person is physically or mentally able to consent to you.
(If there are any questions or confusion, then you do NOT have consent)
2. Clearly communicate your intentions to your sexual partner and give them a chance to clearly communicate their intentions to you.
3. Mixed, confusing, or unclear messages from your partner should be a clear indication that you should stop. Perhaps you are misreading your partner, or perhaps your partner has not figured out how far they want to go with you yet. You must respect the timeline for sexual behavior which your partner is comfortable.
4. Do not take advantage of someone's intoxication or drugged state. Know the signs of incapacitation.
5. Understand that consent to some forms of sexual behavior does not necessarily imply consent to other forms of sexual behavior.
6. Silence and passivity cannot be interpreted as consent. Pay attention to verbal as well as non-verbal communication and body language.
7. Never force someone to have sex with you, or have sex with a partner who has not clearly consented to you by words or actions unmistakable in their meaning.

**For information regarding amorous relationships between employees and students and the employee alcohol policy see full policy on page 110 in the appendix.**

## Frequently Asked Questions
The following are some of the most commonly asked questions regarding the University's sexual misconduct policy and procedures.

*Does a report remain confidential or private?*
Reports made to counselors in the counseling center and to health service providers will be kept confidential. All other reports are considered private. The privacy of all parties with regard to a complaint of sexual misconduct will be maintained, except insofar as it interferes with the University's obligation to fully investigate allegations of sexual misconduct. Where information is shared, it will still be tightly controlled on a need-to-know basis. Dissemination of information and/or written materials to persons not involved is not permitted.

In all complaints of sexual misconduct, the complainant will be informed of the outcome. Certain University administrators are informed privately (e.g. University President, Vice President for Student Affairs, Dean of Students, Title IX Coordinator, etc.) of the outcome and any change to a student's status, as necessary. The

University must statistically report the occurrence of major violent crimes on and adjacent to campus, including certain sex offenses, and hate crimes in an annual report of campus crime statistics. This statistical report does not include personally identifiable information.

*Will my parents/guardians be told?*
No, not unless you tell them or in a case that the complainant is a minor. In some instances, the University reserves the right to contact parents/guardians. These instances may include incidents that may be life threatening, harmful to the student's (or other's) health and/or if a student's residency or student status is in jeopardy. Whether you are the complainant or the respondent, the University's primary relationship is to the student and not to the parent/guardian; however, in the event of a major medical, conduct action, or academic jeopardy, students are strongly encouraged to inform their parents/guardians.

*Do I have to name the responding party?*
Yes, if you want formal conduct action to be taken against the responding party. No, if you choose not to file a formal complaint, (but you should consult the complete confidentiality and reporting procedures policy above to better understand the university's obligations depending on what information you share with different university officials). You can report the incident without the identity of the responding party, but doing so may limit the institution's ability to respond comprehensively. You may also make an anonymous report of the incident using this anonymous reporting form which can be found here:
http://www.salve.edu/sexual-misconduct-anonymous-reporting-form

*Will the responding party know my identity?*
Yes, if the university determines there is reasonable cause to believe a violation has occurred and investigates the matter.  Sexual misconduct is a serious offense and the responding party has the right to know the identity of the complainant.

*Will I have to confront the responding party?*
No (refer to sexual misconduct adjudication procedures)

*What should I do if I am accused of sexual misconduct?*
First, do not contact the reporting party. You may want to contact the Dean of Students' office who can explain the University's procedures for dealing with sexual misconduct complaints.  You may also want to contact the Title IX Coordinator for resources including counseling services and other outside resources.

*What about changing residence hall rooms and other ways the University can help remedy the effects of discrimination?*
If you want to move, you may request a room change. Room changes under these circumstances are considered emergencies. It is the University's practice that in emergency room changes, the student is moved to the first available and suitable temporary room. The University reserves the right to relocate students when deemed necessary. Other accommodations that the Dean of Students' staff will advocate for, if available, include:

- Assistance from the University support staff in completing  a permanent room relocation;
- Arranging to dissolve a housing contract and pro-rating a refund;
- Exam, paper or assignment rescheduling;
- Taking an incomplete in a class;
- Transferring class sections;
- Taking a leave of absence from the University;
- A no-contact order; protective orders
- Counseling assistance;
- Escorts or other campus safety protections;

- Transportation assistance or support;
- Assistance with working situations
- Help with finding an off-campus residential alternative;
- Assistance with alternative course completion options;
- Other accommodations for safety as necessary.
- Assistance with questions regarding Visa & immigration
- Assistance with student financial aid

*What should I do to preserve evidence of a sexual assault?*
Police are in the best position to secure evidence of a crime. Physical evidence of a sexual assault must be collected from the alleged victim's person within about 96 hours of the assault, though evidence can be often obtained from towels, sheets, clothes, etc. for much longer periods of time. . If you believe you have been a victim of a sexual assault, you should go to a hospital emergency room before washing yourself or your clothing.  The Office of Safety & Security can provide you with transportation. Typically, a sexual assault health professional (a specifically trained nurse called a SANE) at the hospital is on call and will counsel you. If you go to the hospital, local police will be called at your request. The hospital staff will collect information, check for injuries and address the possibility of exposure to sexually transmitted infections. If you have changed clothing since the assault, bring the clothing you had on at the time of the assault with you to the hospital in a clean, sanitary container such as a clean paper grocery bag or wrapped in a clean sheet. (Plastic containers do not breathe, and may render forensic information useless.)  If you have not changed clothes, bring a change of clothes with you to the hospital, if possible, as they will likely keep the clothes you were wearing as evidence. You can take a support person with you to the hospital, and they can accompany you through the exam, if you want. Do not disturb the crime scene – leave all sheets, towels, etc. that may bear information for the police to collect. If a person believes they have been drugged, then they have 12-24 hours for medical professionals to determine if drugs are still present in the body.

*Will a student be sanctioned when reporting an act of sexual misconduct if the student has illegally used drugs or alcohol?*
No. The University offers amnesty in such situations. The seriousness of the sexual misconduct is a major concern and the University does not want any circumstances (e.g., drug or alcohol use) to inhibit the reporting of sexual misconduct.

*Will the use of drugs or alcohol affect the outcome of a sexual misconduct complaint?*
The use of alcohol and/or drugs by either party will not diminish the responding party's responsibility.  On the other hand, alcohol and/or drug use is likely to affect the complainant's memory and, therefore, may affect the outcome of the complaint.  A person bringing a complaint of sexual misconduct must either remember the alleged incident or have sufficient circumstantial evidence, physical evidence and/or witnesses to prove that the policy was violated. If the complainant does not remember the circumstances of the alleged incident, it may not be possible to impose sanctions on the respondent without further corroborating information.  Use of alcohol and/or other drugs will never excuse a violation by the respondent.

*Will either party's prior use of drugs and/or alcohol be considered when reporting sexual misconduct?*
Not unless there is a compelling reason to believe that prior use or abuse is relevant to the present complaint.

*What should I do if I am uncertain about what happened?*
If you believe that you have experienced sexual misconduct, but are unsure of whether it was a violation of the University's sexual misconduct policy, you should contact the Title IX Coordinator, Dean of Students' office, Office of Residence Life or Safety & Security office (not confidential). You could also meet with a member of the counseling services office (confidential) who can help to define and clarify the event(s), and advise you of your options.

Disclosure: Portions of Salve Regina University's Student Code of Conduct and policies are adapted from the NCHERM Group Model Development Code of Student Conduct and are used here with permission.

## Domestic Violence and Relationship Violence

Rhode Island General Law 12-29.2 defines domestic violence as crimes when committed by one family member or household member against another.  Family or household member is defined as:

- Spouses
- Former spouses
- Adult persons related by blood or marriage and persons who have a child in common regardless of whether they have been married or have lived together
- Adult persons who are currently residing together or who have resided together during the past three years. **PLEASE NOTE: Students in the same residence hall may be considered under this definition. In addition, this may apply to students sharing an off-campus residence.**
- Persons who have a child in common regardless of whether they have been married or have lived together
- Persons who are or have been in a substantive dating or engagement relationship within the past 6 months which shall be determined by the court's consideration of the length of time of the relationship, the type of relationship and the frequency of the interaction between parties.

Domestic violence includes but is not limited to any of the following crimes when committed by one family or household member against another: simple and felony assaults, vandalism, disorderly conduct, trespassing, kidnapping, child snatching, sexual assault, homicide, violations of court orders, stalking, refusal to relinquish or to damage or to obstruct a telephone, burglary and unlawful entry, arson, cyberstalking and cyber harassment, and domestic assault by strangulation.

Rhode Island Law defines domestic abuse as "attempting to cause or causing physical harm, placing another person in fear of immediate physical harm, or causing another to engage involuntarily in sexual relations by force, threat, or duress, stalking via harassment or following a person, and cyberstalking."

There are many forms of physical, verbal, emotional, and sexual abuse that may be used between roommates, friends or couples.

Examples of verbal and emotional abuse include using threatening gestures or language, stalking or harassing, shouting, swearing, blocking the doorway or using body size to intimidate, claiming to be the authority, blaming or accusing, insulting, mocking, driving recklessly to scare the victim, isolating the victim from friends or family, or refusing to listen or respond.  All forms of domestic violence, domestic abuse and relationship violence are in violation of the Student Code of Conduct.

These crimes carry sentences up to 1 year in prison and may result in the serving of a restraining order against the assailant and the requiring of the assailant to attend a recognized treatment program for batterers.

## University Educational and Training Programs

The University recognizes the importance of providing education and training on the subject of sexual violence and sexual misconduct, dating violence, stalking, and domestic violence. These issues are addressed through the First Year Transitions course, Residence Hall programming, and a variety of other programs.

Residence Life staff and Safety and Security staff are specifically trained to respond to these situations. In-service training is available for staff and faculty.